Argued and submitted April 10, 1989, reversed and remanded on claims for intentional infliction of emotional distress and breach of contract; otherwise affirmed July 18, Madani's reconsideration and Kendall's reconsideration denied September 5, both petitions for review allowed October 23, 1990 (310 Or 475)

Hamid MADANI,
*Appellant,*

*v.*

KENDALL FORD, INC.,
and Dan David,
*Respondents.*

(16-87-02515; CA A49072)

794 P2d 1250

Robert E. Franz, Jr., Eugene, argued the cause and filed the brief for appellant.

Jack A. Gardner, Eugene, argued the cause for respondents. With him on the brief were Jeffrey E. Potter and Lombard, Gardner, Honsowetz, Brewer & Schons, Eugene.

Before Richardson, Presiding Judge, and Newman and Deits, Judges.

DEITS, J.

Newman, J., concurring in part; dissenting in part.

Richardson, P. J., concurring in part; dissenting in part.

### DEITS, J.

Plaintiff appeals a judgment for defendants in his action for wrongful discharge, intentional infliction of emotional distress and breach of contract. He assigns as errors the court's dismissal of his claims for wrongful discharge and intentional infliction of emotional distress for failure to state claims, ORCP 21A(8), and its granting of a directed verdict for Kendall Ford[1] on his claim for breach of contract. We affirm in part, reverse in part and remand.

■■ The facts are set out in Judge Newman's concurring and dissenting opinion. We reverse and remand the dismissal of the intentional infliction of emotional distress claim and the directed verdict on the breach of contract claim for the reasons set out in that opinion.

■ For the reasons stated in Judge Richardson's concurrence, we affirm the dismissal of plaintiff's wrongful discharge claim.

Reversed and remanded on claims for intentional infliction of emotional distress and breach of contract; otherwise affirmed.

### NEWMAN, J., concurring in part; dissenting in part.

I concur in the decision on plaintiff's claims for intentional infliction of emotional distress and for breach of contract. I dissent from the decision on his claim for wrongful discharge.

Plaintiff alleges that he was employed by Kendall Ford; that, just before October 22, 1986, David, plaintiff's supervisor, "instructed plaintiff to pull down his pants and expose [himself] * * * to Dan David and others;" that plaintiff was on duty and was standing in an area that was open to public view; that he refused to do as instructed; that David instructed him twice more to pull down his pants, but he still refused; that, as the result of his failure "to do as instructed," Kendall Ford terminated him; and that, as a result of his

---

[1] The court also granted a motion to dismiss plaintiff's breach of contract claim against defendant David. Plaintiff does not assign error to that ruling.

wrongful termination, he suffered mental pain and suffering and lost wages.[1]

The general rule in Oregon is that an employer may discharge an employee at will, in the absence of a contractual, statutory or constitutional requirement to the contrary. *Patton v. J. C. Penney Co.*, 301 Or 117, 120, 719 P2d 854 (1986). There are two categories of exceptions to the general rule: when an employee is discharged for fulfilling an important societal obligation, like jury duty, *Nees v. Hocks*, 272 Or 210, 536 P2d 512 (1975), or refusing to defame a co-employee, *Delaney v. Taco Time Int'l.*, 297 Or 10, 681 P2d 114 (1984); and when an employee is discharged for pursuing an employment related private right that is of important public interest. *Holien v. Sears, Roebuck & Co.*, 298 Or 76, 90, 689 P2d 1292 (1984).

Plaintiff asserts that, if he had complied with the request to pull down his pants and expose himself, he would have violated county ordinances that prohibit that and he would have been subject to criminal penalties.[2] The criminal laws impose an important societal obligation not to commit unlawful acts of exposure. Laws that prohibit acts of exposure, other than those of young children, reflect attitudes, as do

---

[1] On review of an order dismissing claims pursuant to Rule 21A(8), we accept the allegations pleaded in the complaint as true. *Nicholson v. Blachly*, 305 Or 578, 580, 753 P2d 955 (1988).

[2] Section 6.100 of the Lane County Code provides:

"(1) No person, eight years of age or older, shall on public or private property, expose his or her genitals to another person, except within the boundaries of private property with the permission of the owner of said property, that is screened so that the act cannot be viewed from any other property.

"* * * * *

"(4) Violation of LC 6.100(1) above is punishable upon conviction by a fine of not more than $1000 and by imprisonment in the County jail of not more than 30 days, or by both."

Plaintiff also cites Section 4.755 of the Eugene City Code. That section, however, does not contain the language that plaintiff quotes. We assume that he meant to cite Section 4.760, which provides:

"It shall be unlawful for any person eight years of age or older to expose his or her genitalia while in a public place or place visible from a public place, if the public place is open or available to persons of the opposite sex."

Section 4.995 of the Eugene City Code provides that a violation of the above section is punishable by a fine of not more than $500 or confinement in jail not to exceed 100 days, or by both.

laws favoring jury duty or opposing defamation, that the community strongly holds. An employer should not be free to discharge an employee at will because the employee refuses the employer's request to violate laws by exposing himself in public. I dissent, because I believe that plaintiff stated a claim for wrongful discharge and we should reverse the trial court's dismissal of that claim under ORCP 21A(8).

To state a claim for intentional infliction of emotional distress, a plaintiff must show that the defendant intended to cause emotional distress and that its conduct did in fact cause that distress. Furthermore, the trier of fact must be able to find that the defendant's conduct, if proven, constitutes an "extraordinary transgression of the bounds of socially tolerable conduct." *Lewis v. Oregon Beauty Supply Co.,* 302 Or 616, 626, 733 P2d 430 (1987); *Patton v. J. C. Penney Co., supra,* 301 Or at 122; *Hall v. The May Dept. Stores,* 292 Or 131, 137, 637 P2d 126 (1981). Plaintiff realleged the allegations of his claim for wrongful discharge and also alleged that defendants intentionally caused him severe emotional distress when they discharged him for refusing to comply with the instruction to pull down his pants and expose himself to public view and that "such conduct was outrageous, shocking to the conscience and beyond the bounds of tolerable behavior."

The act of discharging an employee ordinarily will not constitute conduct outrageous enough to support a claim for intentional infliction of emotional distress. In *Patton v. J. C. Penney Co., supra,* 301 Or at 124, the court held that the plaintiff had not stated a claim for intentional infliction of emotional distress when he alleged that he was fired because he had refused to break off a social relationship with a female co-employee. The court held that, as a matter of law, the manner in which the plaintiff was discharged, while concededly offensive, did not amount to an extraordinary transgression of the bounds of social toleration and, consequently, the plaintiff did not state a claim for intentional infliction of emotional distress.

As part of its consideration of the *manner* of the plaintiff's discharge, the court considered the *reason* for that discharge—that the plaintiff refused to terminate, at his employer's request, a relationship with a female co-employee.

When it stated that the discharge, as a matter of law, was not conduct that was an extraordinary transgression of the bounds of social toleration, it determined, in effect, that a reasonable jury could not find that the *reason* for the plaintiff's termination was sufficiently outrageous. Here, on the other hand, plaintiff alleged facts from which, if proven, a reasonable jury could find that the reason for plaintiff's discharge was that he refused to obey his employer's instruction to pull down his pants and expose himself to public view. On the basis of that finding, a reasonable jury could also find that defendants' conduct in discharging him for that reason was sufficiently outrageous to be an extraordinary transgression of the bounds of social toleration. I concur that the trial court erred in dismissing plaintiff's claim under ORCP 21A(8) for intentional infliction of emotional distress.[3]

Plaintiff also asserts that the court erred when, at the close of his case, it granted the motion of Kendall Ford (Ford) for a directed verdict on his claim for breach of contract. He asserts that the employee manual that Ford gave to him when he commenced employment was a part of his employment contract. It reads:

> "Our dealership is a growing, progressive organization serving a public need. *You are thus assured of steady employment as long as you are a productive employee.* We expect each of our employees to be a maximum producer, always doing his part to accomplish our common business objectives." (Emphasis supplied.)

---

[3] Defendants argue that, even if the court erred when it dismissed plaintiff's claims for wrongful discharge and for intentional infliction of emotional distress, its errors were harmless. Defendants refer to plaintiff's testimony on cross-examination at trial on the breach of contract claim in which, according to defendants, plaintiff admitted that the incident in which his employer asked him to expose himself was a form of "horseplay" in which he refused to participate. Defendants assert that, even if they fired him for his refusal to participate in "horseplay," that firing would not, as a matter of law, support plaintiff's claim for wrongful discharge or for intentional infliction of emotional distress. Defendants rely on *Pio v. Kelly,* 275 Or 585, 592, 552 P2d 1301 (1976), which held, on *de novo* review, that the trial court's ruling that sustained the plaintiff's demurrer to the defendant's affirmative defense was not reversible error, because the undisputed facts in the record established that, as a matter of law, the defendant could not have prevailed on the defense it alleged. Unlike in *Pio,* our review here is not *de novo.* Moreover, we cannot say, as a matter of law, on the basis of the evidence on the breach of contract claim, that plaintiff could not have offered evidence sufficient to present a jury question on his tort claims, regardless of the label of "horseplay" that any of the parties gave to the events. *Pio* therefore, is not authority for the proposition that the court's errors in dismissing plaintiff's tort claims were harmless. They were not.

Plaintiff argues that Ford could not terminate him as long as he was a productive employee, except for cause. He contends that the jury could have found that he was a productive employee and that Ford breached the contract when it terminated him. The court, however, interpreted the manual differently and concluded that Ford employed plaintiff at will, and it granted the motion for a directed verdict.

The employee manual was part of plaintiff's employment contract. *Yartzoff v. Democrat-Herald Publishing Co.,* 281 Or 651, 576 P2d 356 (1978). Whether a contract is ambiguous is a matter of law for the court. *Timberline Equip. v. St. Paul Fire and Mar. Ins.,* 281 Or 639, 643, 576 P2d 1244 (1978). The manual is ambiguous, because it is capable of more than one sensible and reasonable interpretation, *see Deerfield Commodities v. Nerco, Inc.,* 72 Or App 305, 317, 696 P2d 1096 (1985), that is, that Ford could discharge plaintiff either at will at any time or only for cause, after a probationary period. There is no provision in the manual that expressly states that, after a probationary period, Ford could discharge plaintiff only for cause. The manual, however, assures plaintiff of "steady employment as long as you are a productive employee." It also provides for a "trial" or "probationary" period during which either party is free to decide that it "is not suited for the other."[4] The manual also declares that Ford will not "tolerate" certain kinds of employee conduct (alcohol use, drug use, violence and tardiness).[5] Plaintiff introduced sufficient evidence from which a jury could find that Ford discharged him after his probationary period had passed and that he was a productive employee. The evidence was sufficient, therefore,

---

[4] A manual section entitled "Trial Period" provides:

"During the probationary period of your employment, both Kendall Ford and you are on trial. You will be given every opportunity to prove your ability. If you should be found unsuited for a particular job, every effort will be made to re-assign you to work for which you are suited, provided a vacancy exists. If you or the company decides during this period that either is not suited for the other, it is understood we may part as good friends."

[5] The manual states that "[a]bsenteeism cannot be tolerated"; that "[p]romptness is a basic requirement;" and that the "[u]se of violence will not be tolerated, nor will the use of alcoholic beverages or drugs during working hours or on our premises at any time." The manual also states in a section on vacations and vacation pay that

"should an employee terminate by his own choice or be *discharged with cause,* vacation privileges and vacation pay will be automatically forfeited by the employee." (Emphasis supplied.)

to create questions of fact for the jury whether the parties intended that Ford could discharge plaintiff at will or only for cause and, if so, for what cause. The trial court erred in granting defendant's motion for a directed verdict, and I concur in the reversal on the claim for breach of contract.

**RICHARDSON, P. J.,** concurring in part; dissenting in part.

I agree with the lead opinion that the court did not err in dismissing plaintiff's claim for wrongful discharge. The facts pleaded do not make out a claim.

The claims for wrongful discharge and intentional infliction of emotional distress were pleaded in the "Amended Complaint" and both were stricken under ORCP 21A(8).[1] Both of these claims are premised on the theory that plaintiff's employment was generally terminable at will. They are also based on a single incident that plaintiff claimed occurred at work. He alleged that he was employed as a salesperson, and that

> "defendants instructed plaintiff to pull down his pants, and expose * * * [himself] to Defendant Dan David, [his supervisor] and others. At the time * * * plaintiff was on duty, at work, and was standing in a public place which was in the open view of members of the public, including fellow employees, children, women and customers."

He alleged that he refused to do as instructed and was instructed two more times to pull down his pants. He again refused, and "[a]s a result of failing to do as instructed and ordered * * * defendants terminated plaintiff."

In the first claim of the amended complaint, plaintiff does not allege that his employment was other than at will. In *Sheets v. Knight,* 308 Or 220, 779 P2d 1000 (1989), the court summarized the concept of at will employment and the exceptions recognized in Oregon:

> " '[G]enerally an employer may discharge an employee at any time and for any reason, absent a contractual, statutory or constitutional requirement [to the contrary]. Termination of

---

[1] The contract claim was pleaded for the first time in the second amended complaint as the only claim against both defendants. The case proceeded to trial on the third amended complaint, which alleged only the contract claim and that only against Kendall Ford.

employment ordinarily does not create a tortious cause of action.'" 308 Or at 230 (quoting *Patton v. J. C. Penney,* 301 Or 117, 120, 719 P2d 854 (1986)).

The exceptions, other than statutory or constitutional restrictions, are a discharge for exercising a job-related right, *see Brown v. Transcon Lines,* 284 Or 597, 588 P2d 1087 (1978), or a discharge for complying with a public duty. *See Nees v. Hocks,* 272 Or 210, 536 P2d 512 (1975). To establish a claim for wrongful discharge when the employment is at will, the plaintiff must *plead* and prove that the discharge fell within one or both of the exceptions to the general rule of termination.

Plaintiff alleges the facts of the incident with David, that he was discharged and that the discharge was wrongful. As in *Sheets v. Knight, supra,* "The pleadings contain no allegation that the plaintiff was 'discharged' for complying with or fulfilling a public duty or for exercising an employment-related right." 308 Or at 231. Plaintiff does not plead any theory that would relate the facts he alleges to the elements of the tort of wrongful discharge. *Sheets v. Knight, supra.*

Plaintiff argues that the court can take judicial notice of a Lane County ordinance and a Eugene Ordinance that prohibit the type of exposure that he allegedly was ordered to do. He contends that, had he complied with David's order, he would have subjected himself to criminal penalties under the ordinances. A discharge, he contends, for refusing to disobey the law is tortious. Assuming the judicially noticed facts of the ordinances to be true, the deficiency of the complaint is not cured. In *Sheets v. Knight, supra,* the plaintiff, a county employee, alleged that he was discharged by certain governmental officials because of his knowledge of improper activities on their part and because of "personal and political" considerations. The court held that, even assuming that the plaintiff's knowledge of improper activities related to a public duty or was job-related, the complaint was not sufficient to make out a claim for wrongful discharge. The court refused to speculate as to what facts could be proven that would make the plaintiff's discharge wrongful.

The complaint here is equally deficient, even if we assume that plaintiff was asked to do an act that would have

violated a city or county ordinance. The court did not err in dismissing the claim for wrongful discharge.

I disagree with the lead opinion that plaintiff has pleaded a claim for intentional infliction of emotional distress.

"'To state a claim for intentional infliction of severe emotional distress, a plaintiff must plead that (1) the defendant intended to inflict severe emotional distress on the plaintiff, (2) the defendant's acts were the cause of the plaintiff's severe emotional distress, and (3) the defendant's acts constituted an extraordinary transgression of the bounds of socially tolerable conduct." *Sheets v. Knight, supra,* 308 Or at 236.

In his claim, plaintiff realleges all the facts supporting the claim for wrongful discharge and then alleges:

"Such conduct by defendants was outrageous, shocking to the conscience and beyond the bounds of tolerable behavior, and was intended to cause and did cause plaintiff severe emotional distress."

The act that plaintiff alleges is tortious is the discharge. He does not claim damages just because his supervisor "instructed [him] to pull down his pants and expose [himself]." Consequently, the issue is whether the act of discharging plaintiff, even for the reasons that plaintiff claims, is "extraordinary conduct which a reasonable jury could find beyond the farthest reaches of socially tolerable behavior." *Hall v. The May Dept. Stores,* 292 Or 131, 137, 637 P2d 126 (1984); *see also Lewis v. Oregon Beauty Supply Co.,* 302 Or 616, 733 P2d 430 (1987). There is nothing in plaintiff's complaint, other than the conclusory allegations that the discharge was "outrageous, shocking to the conscience and beyond the bounds of tolerable behavior," and was intended to cause him emotional distress, that would make the act of firing outrageous in the extreme.

In *Patton v. J. C. Penney Co.,* 301 Or 117, 719 P2d 854 (1986), the plaintiff was discharged when he refused to accede to a supervisor's demand to discontinue a social relationship with another employee. He sought damages for wrongful discharge and intentional infliction of emotional distress. The court said that the focus of the intentional infliction tort is not on the result—the emotional distress—but on the purpose of the tortfeasor and the means used to accomplish that purpose. In response to the facts in *Patton,* the court said:

"In the case at bar, the alleged manner in which plaintiff was discharged does not reach the level of intolerable conduct." 301 Or at 124.

The court then described the plaintiff's supervisor's conduct as "rude, boorish, tyrannical, churlish and mean" but said that it was not "outrageous in the extreme." 301 Or at 124. In the light of the Supreme Court's description of the tort, plaintiff's allegations here fall far short of stating a claim. The trial court did not err in dismissing the claim under ORCP 21A(8). *See also Lewis v. Oregon Beauty Supply Co., supra.*

In addition to the arguments that dismissal of the claim was proper, defendants contend alternatively that, assuming that the claim was pleaded, any error in dismissing it was harmless, because the evidence presented demonstrates that plaintiff cannot prove the claim. In deciding if a claim is properly alleged under ORCP 21, we must assume the truth of well pleaded facts. However, in deciding if the error requires reversal, we may look at the evidence actually presented during trial on the other claim. In *Pio v. Kelly,* 275 Or 585, 552 P2d 1301 (1976), the court held that, even though the trial court had erred in sustaining the plaintiff's demurrer to the defendant's defenses, there was no prejudice requiring reversal because, from the facts presented at trial on the remaining issues, it was clear that the defendant could not have prevailed on the defenses.

In this case, although the tort claims were dismissed, plaintiff fully presented his evidence in the trial of the contract claim on the incident that was the sole basis of both of the dismissed claims. He was, at the time of the incident, a salesman in the truck division of employer and was in the sales area with David, his supervisor, and another salesman, Jensen. On direct examination, he testified:

"I was in [David's] office with Mr. Jensen and we were standing there, we always joke around and say things and stuff, but that day was different because Gene McDougald [another salesman] was sitting there in the show room, was walking by the truck building and there is windows all of the way around and Dan asked me and Rich Jensen — let's B.A. him and I didn't do anything and Rich, Rich asked me then and I said no. Then Dan asked both of us again and Rich pulled his pants and knocked at the window and [Gene] saw that. Then they walked outside and Gene said that was dirty

and he walked away. But Dan asked me twice and I said, 'I am sorry Dan, I have never done that before and I will not do it' and he said okay."

On cross-examination, he agreed that the incident was another prank of the sort that the sales force often engaged in, but he did not want to participate at that time.

Plaintiff's own description of the critical incident is not sufficient to support a jury determination in his favor on the tort claim for intentional infliction of emotional distress. If the lead opinion is correct that the claim was sufficiently pleaded and should proceed to trial, the facts presented would not be sufficient to survive a motion for directed verdict. There is no reason to expect that plaintiff's description of the incident would be any different on retrial. Remanding for a trial on this claim is a futility, a waste of court resources, and the error, if such it be, is harmless.

I concur in the lead opinion's holding that the trial court erred in allowing defendants' motion for directed verdict on the breach of contract claim.