Argued and submitted December 4, 1989, reversed and remanded in part, otherwise affirmed August 29, 1990, respondent Crater Lake's reconsideration allowed and appellants' reconsideration denied by opinion January 23, 1991
See 105 Or App 314 (1991)

Bobbie J. CARLSON,
Allen E. Carlson, Bobbie Sam Lakings,
and Gwendolyn A. Karau,
*Appellants,*

*v.*

CRATER LAKE LUMBER CO.,
and WTD Industries, Inc.,
*Respondents.*

(16-88-01489; CA A60073)

796 P2d 1216

Martha L. Walters, Eugene, argued the cause for appellants. With her on the briefs were Suzanne Bradley Chanti and Swanson & Walters, P.C., Eugene.

Galen L. Bland, Portland, argued the cause and filed the brief for respondents.

Before Richardson, Presiding Judge, and Newman and Deits, Judges.

NEWMAN, J.

## NEWMAN, J.

Plaintiffs (mother, father and their two daughters) were employees of defendant Crater Lake Lumber Co. (Crater Lake), which owns and operates a sawmill. They appeal from the summary judgment that the court granted for defendants as to:

1) The claim of Bobbie Carlson (Bobbie), the mother, for wrongful discharge;

2) The claims of Allen Carlson (Allen), the father, for

a) wrongful discharge, and

b) breach of contract;

3) The claim of Gwen Karau (Gwen), a daughter, for wrongful discharge;

4) The claim of Bobbie Sam Lakings (Sam), a daughter, for wrongful discharge;

5) The joint claim of all plaintiffs for intentional infliction of emotional distress; and

6) The issue of the liability of defendant WTD Industries, Inc. (WTD), the sole shareholder of Crater Lake.[1]

We review the record in the light most favorable to plaintiffs and draw all reasonable inferences in their favor to determine whether defendants carried their burden of establishing that there were no genuine issues of material fact and that they were entitled to judgment as a matter of law. ORCP 47C; *Seeborg v. General Motors Corporation,* 284 Or 695, 699, 588 P2d 1100 (1978). We reverse as to Bobbie's claim for wrongful discharge and otherwise affirm.

Plaintiffs' evidence is that, in early March, 1987, Bobbie's supervisor, Glogowski, came into the scale shack where she worked, slapped her on the buttocks and said, "How's it going, easy money?" She told Glogowski never to

---

[1] Following the ruling on the summary judgment motion, plaintiffs lost in a trial to the court on their statutory claims for sexual discrimination, ORS 659.030; on Sam's claim for workers' compensation discrimination, ORS 659.410; ORS 659.420; and on Allen's claim for breach of a log sale contract. None of the plaintiffs assigns error as to those claims.

touch her again. After that, he engaged in systematic harassment by swearing at her, insulting her and criticizing her work. That caused her stress and anxiety and, on March 7, paramedics took her to the hospital for high blood pressure. She did not report the slapping incident to management.

Crater Lake paid its employees bonuses at the end of March, but Bobbie did not receive one. She spoke twice to Miller, the mill manager, about the bonus, and he told her that Glogowski had advised him that she did not deserve a bonus, because she was only a part-time employee. She was a full-time employee who worked 55 hours per week, and she told that to Miller. On April 1, she submitted a letter of resignation and told Miller that she could not work under the existing conditions. In her deposition, she testified that she left work because she did not get her bonus and because of Glogowski's treatment of her. She also testified that, after she resigned, Glogowski asked her why she had quit. She said, "You know why," and he snickered and said, "Prove it." Bobbie then contacted an attorney, who sent a written demand to Miller for reinstatement and payment of the bonus. On April 13, Crater Lake paid the bonus. Bobbie did not continue to seek reinstatement.

Bobbie contends that defendants constructively discharged her by creating intolerable working conditions—harassment by Glogowski and denial of the bonus—with the intent to force her to resign, because she had resisted sexual harassment and had tried to get a bonus. Generally, employment is at will, absent a contractual, statutory or constitutional requirement to the contrary. *Patton v. J. C. Penney,* 301 Or 117, 120, 719 P2d 854 (1986); *Delaney v. Taco Time Int'l.,* 297 Or 10, 14, 681 P2d 114 (1984). There are two types of exceptions: when an employee is discharged for fulfilling an important societal obligation and when an employee is discharged for exercising an employment related right of important public interest. *Holien v. Sears, Roebuck & Co.,* 298 Or 76, 86, 689 P2d 1292 (1984). If existing remedies adequately protect the employment related right, however, the Oregon Supreme Court has usually chosen not to recognize an additional common law remedy of wrongful discharge. *Walsh v. Consolidated Freightways,* 278 Or 347, 352, 563 P2d 1205 (1977).

■ ■ A "constructive" discharge may qualify as a discharge. *Bratcher v. Sky Chefs, Inc.,* 308 Or 501, 783 P2d 4 (1989); *see also Sheets v. Knight,* 308 Or 220, 779 P2d 1000 (1989). If an employee claims constructive discharge due to working conditions that are unacceptable, she must show that the employer deliberately created or maintained the conditions with intent to force her to resign and that she quit because of the conditions. *Bratcher v. Sky Chefs, Inc., supra,* 308 Or at 505.

■ If Crater Lake constructively discharged Bobbie because she resisted sexual harassment, her claim falls within the second category of wrongful discharge—for exercising an employment related right of important public interest—and the court erred in granting summary judgment for defendants. In *Holien v. Sears, Roebuck and Co., supra,* the court held that, because sexual harassment by a supervisor on the job is a forbidden discriminatory act, a retaliatory discharge for resistance to that harassment is tortious.[2] The court noted that existing state and federal remedies for sex discrimination, ORS 659.121 and Title VII, did not provide an adequate remedy for a retaliatory discharge for resistance to sexual harassment, because they

> "fail to capture *the personal nature of the injury done to a wrongfully discharged employee as an individual* and the remedies provided by the statutes fail to appreciate the relevant dimensions of the problem. Reinstatement, back pay, and injunctions vindicate the rights of the victimized group without compensating the plaintiff for such personal injuries as anguish, physical symptoms of stress, [and] a sense of degradation[.] * * * Legal as well as equitable remedies are needed to make the plaintiff whole." *Holien v. Sears, Roebuck and Co., supra,* 298 Or at 97. (Citations omitted; emphasis supplied.)

 Defendants dispute that the slapping incident and Glogowski's subsequent treatment of Bobbie occurred. They assert that, even if the incidents did occur, Miller had no knowledge of them when he denied Bobbie her bonus and, therefore, that he did not act in retaliation for her resistance

---

[2] In *Cross v. Eastlund,* 103 Or App 138, 796 P2d 1214 (1990), we held that the plaintiff did not state a claim for wrongful discharge where she pleaded she was discharged because she was pregnant. We stated that a discharge because of pregnancy is an unlawful act of sex discrimination under ORS 659.030.

to sexual harassment by Glogowski. There are genuine issues of material fact about whether Glogowski slapped plaintiff and harassed her after she told him never to touch her again, whether he urged Miller to deny Bobbie a bonus that he knew that she had earned and whether Miller based his decision to deny the bonus on Glogowski's advice. Crater Lake does not dispute that Glogowski asked Bobbie why she had resigned, that she said, "You know why," and that he snickered and said, "Prove it." The facts, if viewed in the light most favorable to Bobbie, could support an inference that Glogowski intended to make her work conditions so intolerable that she would quit. The court erred in granting summary judgment for defendants on Bobbie's claim for wrongful discharge for resistance to sexual harassment.

■ Bobbie also alleges a wrongful discharge on the basis that she was constructively discharged in retaliation for asserting a wage claim. There is, however, an adequate statutory remedy that protects the rights of employees to make good faith wage claims. ORS 652.355. The nature of the injury that an employee who asserts a wage claim and is discharged for doing so suffers is not comparable to the "personal nature" of the injury that an employee suffers who endures sexual harassment and is then fired for resisting the harassment. *See Holien v. Sears, Roebuck & Co., supra.*

Plaintiffs Allen, Gwen and Sam each claim that they were discharged in retaliation for Bobbie's assertion of her employment rights.[3] They urge us, in effect, to recognize a new category of exception to the "at will" employment doctrine. They have claims for wrongful discharge, because Bobbie, a third party who is their relative, was wrongfully discharged for assertion of important employment rights.

■ To the extent that these three plaintiffs' wrongful discharge claims are grounded on Bobbie's assertion of a wage

[3] Crater Lake fired Allen on April 28. Gwen was on a medical leave of absence from the mill when the ownership changed. On May 11, she reported to Miller's office to begin work. He asked her to leave when Glogowski said that she was Bobbie's daughter. The parties dispute whether she was discharged or whether Crater Lake refused to hire her. Sam injured her thumb on the job on April 11. Her doctor released her for light duty work, but Crater Lake assigned her tasks that violated the restrictions. She did not complain to management, but her doctor prohibited her from all work. Crater Lake offered her another light duty position in June, but she refused to return to work. She claims that she was constructively discharged.

claim, they are without merit. Bobbie does not have a claim for wrongful discharge on that basis. To the extent that the other plaintiffs' wrongful discharge claims are grounded on Bobbie's resistance to sexual harassment, they also lack merit. In *Holien,* the court ruled that the additional remedy of wrongful discharge was necessary to redress fully the *personal nature* of the injury that an employee suffers who has been sexually harassed and then discharged for resisting that harassment. The need for an additional remedy is not as compelling, however, if the employee who claims wrongful discharge is not the victim of the sexual harassment. Allen, Gwen and Sam were not sexually harassed or discharged for resisting sexual harassment. Even if they were discharged in retaliation for Bobbie's resistance to sexual harassment, they did not suffer the kind of "personal" injury that *Holien* described.[4] Accordingly, they do not have claims for wrongful discharge. Any issues of fact as to the circumstances of their discharges, therefore, are not material and the court did not err in granting summary judgment for defendants.

The court also did not err in granting a summary judgment for defendants on plaintiffs' joint claim for intentional infliction of emotional distress. Plaintiffs assert that Crater Lake discharged Allen, Gwen and Sam with the intent to cause each of the four plaintiffs severe emotional distress, in retaliation for Bobbie's resistance to sexual harassment and her success in forcing Crater Lake to pay her bonus after she had quit. Plaintiffs appear to claim that Bobbie suffered severe emotional distress because of the conduct directed at her relatives and that Allen, Gwen and Sam each suffered severe emotional distress because of their own discharges and the discharges of the other two.

 It is possible to have a claim for intentional infliction of emotional distress on the basis of a discharge, even if there is no wrongful discharge, *see Madani v. Kendall Ford, Inc.,* 102 Or App 478, 794 P2d 1250 (1990), if the defendant intended to inflict severe emotional distress, the acts did cause severe

---

[4] Moreover, ORS 659.030(1)(a) makes it an unlawful employment practice

"For an employer, * * * because of the race, religion, color, sex, national origin, marital status or age *of any other person with whom the individual associates,* * * * to refuse to hire or employ or to bar or discharge from employment such individual." (Emphasis supplied.)

emotional distress and the acts constituted an extraordinary transgression of the bounds of socially tolerable conduct. *Lewis v. Oregon Beauty Supply Co.,* 302 Or 616, 626, 733 P2d 430 (1987); *Patton v. J. C. Penney Co., supra,* 301 Or at 122; *Hall v. The May Dept. Stores,* 292 Or 131, 137, 637 P2d 126 (1981). Ordinarily, the act of firing is not beyond the bounds of socially tolerable conduct, although the *manner* in which an individual is discharged can constitute an extraordinary transgression of the bounds of social toleration. *See Patton v. J. C. Penney, supra,* 301 Or at 123-24. A discharge can also be beyond the bounds of socially tolerable conduct if the *reason* for it is sufficiently outrageous. *Madani v. Kendall Ford, Inc., supra.*

■ As a matter of law, Crater Lake's discharge of Allen, Gwen and Sam, even if motivated by malice toward Bobbie, was not conduct that exceeded the bounds of social toleration. Because they do not have claims for intentional infliction of emotional distress for their own discharges, Bobbie cannot have a derivative claim for emotional distress resulting from their discharges.

■ Allen also brings a claim for breach of contract on the ground that his discharge violated terms of his employment contract, set forth in the Crater Lake employee handbook. Crater Lake allowed its employees to purchase work gloves from the company. Although the handbook was silent on the matter, and there was no written policy on it, an employee could take gloves and sign for them, and Crater Lake would deduct the price of the gloves from the employee's paycheck. On April 27, Glogowski reported to Miller that he saw Allen take two pairs of gloves and only write down the price of one pair. On April 28, Miller fired Allen, who does not dispute that he took two pairs of gloves and wrote down the price of one pair only.

Allen asserts that the handbook constituted a contract of employment. *See Yartzoff v. Democratic-Herald Publishing Co.,* 281 Or 651, 576 P2d 356 (1978); *Domingo v. Copeland Lumber Yards,* 81 Or App 52, 724 P2d 841 (1986). He argues that, under it, Crater Lake could discharge him only for cause. He relies on a section entitled "Work Rules and Penalties," which states that

"the violation of any of the following rules will form the basis

for disciplinary action, which may vary from written warning to discharge, depending on the specific nature of the offense[.]"

After the recitation of rules, the section concludes:

> "*Your cooperation in observing work rules will make it unnecessary for the Company to exercise any disciplinary action against you.* The Company will determine whether there was cause for discipline or discharge. The Company will further determine what level of discipline will be enforced." (Emphasis supplied.)

He argues that he did not violate the rules when he took the gloves and, therefore, a discharge for that reason was not a discharge for cause. Moreover, he asserts that the real reason for his discharge was retaliation for Bobbie's actions. Crater Lake claims that it discharged Allen for theft, a violation of work rules. It indicated on a "termination data sheet" that the discharge was for cause.

Allen's reliance on the handbook provision is misplaced. It does not say that a discharge can only be for cause. Although it does say that misconduct can result in a discharge, it does not say that there must be misconduct in order for there to be a discharge. The employer retains its right to fire at will. *See Janzen v. Sunriver Lands, Inc.,* 85 Or App 38, 42, 735 P2d 376 (1987). As a matter of law, there was no breach of contract. Although there may be a factual issue as to the reason for Allen's discharge, it is not material. The court did not err when it granted a summary judgment for defendants on Allen's contract claim.[5]

The court also did not err in granting a summary judgment for defendant WTD on the issue of its liability for the actions of Crater Lake. Plaintiffs assert that WTD should be liable for the actions of its wholly owned subsidiary on the principle of *respondeat superior.* The facts, however, do not support an inference that WTD exercised the type of control over Crater Lake that would justify an exception to the rule of limited shareholder liability. *See Amfac Foods v. Int'l Systems,* 294 Or 94, 654 P2d 1092 (1982).

---

[5] Defendants argue that the handbook is not a contract of employment. It contains a disclaimer that it "is not to be construed as a contract of employment." We need not determine the effect of that disclaimer in view of our disposition of the case.

Reversed and remanded as to Bobbie Carlson's claim for wrongful discharge for resistance to sexual harassment; otherwise affirmed.