Argued and submitted September 11, 2000, decision of Court of Appeals and judgment of circuit court affirmed in part and reversed in part, and case remanded to circuit court for further proceedings February 22, 2002

Kenneth BABICK,
Gary Moore, and Jack K. Minzey, Jr.,
and others similarly situated,
*Petitioners on Review /*
*Respondents on Review,*

*v.*

OREGON ARENA CORPORATION,
an Oregon Corporation,
*Respondent on Review /*
*Petitioner on Review.*

(CC 9704-02797; CA A99542; SC S46518, S46578)
(Consolidated for Argument and Opinion)

40 P3d 1059

William B. Aitchison, of Aitchison & Vick Inc., Portland, argued the cause for petitioners on review/respondents on review. Megan E. Glor, of Swanson, Thomas & Coon, Portland, filed the brief.

John R. Faust, Jr., Portland, argued the cause and filed the brief for respondent on review/petitioner on review. With him on the brief were Karen O'Kasey, Thomas M. Triplett, and Schwabe, Williamson & Wyatt, P.C.

Stephen L. Brischetto, Portland, filed a brief for *amicus curiae* Oregon Trial Lawyers Association.

Before Carson, Chief Justice, and Gillette, Durham, Leeson, and Riggs, Justices.**

** Van Hoomissen, J., retired December 31, 2000, and did not participate in the decision of this case; Kulongoski, J., resigned June 14, 2001, and did not participate in the decision of this case; De Muniz and Balmer, JJ., did not participate in the consideration or decision of this case.

GILLETTE, J.

## GILLETTE, J.

The issue in this civil action is whether plaintiffs, at-will employees who worked for defendant as security guards at a concert arena, stated claims for relief for wrongful discharge and intentional infliction of severe emotional distress. The Court of Appeals ruled that certain of the plaintiffs had stated claims for relief with respect to both torts. *Babick v. Oregon Arena Corp.*, 160 Or App 140, 980 P2d 1147 (1999). For the reasons that follow, we reverse the decision of the Court of Appeals with respect to those plaintiffs' wrongful discharge claim, but otherwise affirm.

We take the following statement of facts from the lead opinion in the Court of Appeals:

> "Defendant owns the Memorial Coliseum, a large entertainment forum in Portland. Defendant hired plaintiffs to provide security and medical assistance at music concerts and other entertainment events held there. As part of their employment, plaintiffs received training from defendant to carry out their functions as security officers. That training included instruction on 'radio procedures, * * * defensive tactics, the use of force, action to be taken in cases of suspected drug possession and the possession of alcohol by minors, [and] arrest protocol * * *.' One night, some of those security officers were working at a music concert performed by the group known as Phish. At that concert, certain security officers arrested, or attempted to arrest, some members of the audience for engaging in assaultive behavior and illegal drug and alcohol possession. The arrests were consistent with the training they had received from defendant and were otherwise lawful under Oregon law. About a week later, defendant discharged the entire group of security officers, including those who were at the concert but did not make any arrests and those who were employed as security officers at the time but did not work at that concert. Defendant fired all the security officers in retaliation for the lawful law enforcement actions of some security officers at the Phish concert."

160 Or App at 142-43.

After they were fired, plaintiffs brought the present action against defendant, alleging wrongful discharge (on the

theory that they had been discharged for fulfilling an important societal duty, *i.e.*, arresting lawbreakers) and intentional infliction of severe emotional distress (on the theory that, in terminating their employment, defendant intended to and did cause them severe emotional distress). Defendant moved to dismiss under ORCP 21 A(8), and the trial court granted that motion. With the court's leave, plaintiffs then submitted an amended complaint that supplemented the factual allegations that pertained to the intentional infliction of severe emotional distress claim. Specifically, plaintiffs alleged:

"11.

"Defendant, through its agents and employees, did the following during and after the November 24 Phish concert:

"a.   publicly berated plaintiffs for taking or attempting to take law enforcement action at the November 24 Phish concert consistent with Oregon law and defendant's prior instruction;

"b.   interfered with plaintiffs' efforts to take law enforcement action at the November 24 Phish concert by releasing intoxicated and violent concertgoers who had been detained by plaintiffs, thereby undermining plaintiffs in the performance of their security duties and presenting a threat of imminent physical harm to plaintiffs;

"d.[1]   berated plaintiffs for taking law enforcement action and for defending themselves against Phish employees and agents and employees and agents of the concert promot[e]r who physically attacked plaintiffs and interfered with plaintiffs' performance of their security activities during and immediately after the November 24 Phish concert;

"e.   humiliated plaintiffs by publicly announcing after the November 24 Phish concert that plaintiffs' law enforcement actions would be a 'marketing disaster' for defendant; and

---

[1] No paragraph "c" appears in the original amended complaint.

"f.    after learning plaintiffs had to defend themselves from physical injury against Phish and promot[e]r representatives during the November 24 Phish concert, condoned the actions of Phish employees and agents and employees and agents of the concert promot[e]r by threatening to terminate and actually terminating plaintiffs' employment.

"12.

"The aforementioned acts by defendants constitute an extraordinary transgression of the bounds of socially tolerable conduct. In so acting, defendant OAC intended to and did *inflict severe emotional distress* on plaintiffs. As plaintiffs' employer, defendant had a duty to refrain from subjecting plaintiff to severe emotional distress."

The trial court concluded that the amended complaint also failed to state a claim and again dismissed, this time without leave to replead.

Plaintiffs appealed, and a divided panel of the Court of Appeals reversed in part. The Court of Appeals held that, with respect to the plaintiffs who participated in the arrests at the Phish concert, the complaint stated a claim for wrongful discharge, on a theory that those plaintiffs were terminated for fulfilling a public duty. 160 Or App at 149. However, the court affirmed the dismissal of the wrongful discharge claims with respect to those plaintiffs who did not participate in the arrests, concluding that the complaint alleged that those plaintiffs had been discharged because of their *association* with the other plaintiffs, a reason that cannot support a wrongful discharge claim. *Id.* The Court of Appeals also held that the complaint stated a claim for intentional infliction of severe emotional distress because plaintiffs' allegation in the amended complaint that defendant had subjected them to a threat of imminent danger (by releasing detainees) qualified as an allegation of "socially intolerable" conduct. *Id.* at 150.

Defendant petitioned for review of the Court of Appeals' decision insofar as it holds that, with respect to the plaintiffs who did participate in the arrests, the complaint states viable claims for wrongful discharge and intentional

infliction of severe emotional distress. Plaintiffs also petitioned for review, challenging the Court of Appeals' decision to uphold the dismissal with respect to those plaintiffs who did not participate in the arrests. We allowed both petitions.

■ In reviewing a dismissal under ORCP 21 A(8), we accept all well-pleaded allegations of the complaint as true and give plaintiffs the benefit of all favorable inferences that may be drawn from the facts alleged. *Scovill v. City of Astoria*, 324 Or 159, 164, 921 P2d 1312 (1996). Our task is to determine only whether those allegations, so construed, are sufficient to constitute a claim. *Id.*

## WRONGFUL DISCHARGE

Although this court repeatedly has affirmed the general validity of the at-will employment rule,[2] it has acknowledged that a discharge of an at-will employee nonetheless may be deemed "wrongful" (and, therefore, actionable) under certain circumstances. Examples of such circumstances include: (1) when the discharge is for exercising a job-related right that reflects an important public policy, *see, e.g., Brown v. Transcon Lines*, 284 Or 597, 588 P2d 1087 (1978) (employee unlawfully discharged for filing workers' compensation claim); or (2) when the discharge is for fulfilling some important public duty, *see, e.g., Delaney v. Taco Time Int'l*, 297 Or 10, 681 P2d 114 (1984) (employee discharged for refusing to defame another employee); *Nees v. Hocks*, 272 Or 210, 536 P2d 512 (1975) (employee discharged for serving on jury).

Plaintiffs have pleaded this case as a "public duty," not a "job-related right," case. The Court of Appeals accepted plaintiffs' argument that the "public duty" exception to the at-will rule is implicated by plaintiffs' allegation that they were discharged for making lawful arrests. The court first noted (correctly) that it must "*find* a public duty, not create one," using constitutional and statutory provisions and case

---

[2] Specifically, this court has stated that "[g]enerally an employer may discharge an employe[e] at any time and for any reason, absent a contractual, statutory or constitutional requirement [to the contrary]." *Patton v. J. C. Penney Co.*, 301 Or 117, 120, 719 P2d 854 (1986). *See also Madani v. Kendall Ford, Inc.*, 312 Or 198, 202, 818 P2d 930 (1991) (quoting *Patton* to that effect); *Sheets v. Knight*, 308 Or 220, 230-31, 779 P2d 1000 (1989) (same).

law. *Babick*, 160 Or App at 144. The Court of Appeals then held that, for purposes of the "public duty" theory of wrongful discharge,

> "it is not necessary that a statute specifically obligate an employee to act in the way that precipitated the discharge. * * * Rather, a public duty may arise from evidence of a 'substantial public policy that would * * * be "thwarted" if an employer were allowed to discharge its employee without liability.' "

*Id.* (quoting *Banaitis v. Mitsubishi Bank, Ltd.*, 129 Or App 371, 376, 879 P2d 1288 (1994)).

Applying that standard to the present case, the Court of Appeals examined the statutes that plaintiffs had identified as relevant: ORS chapters 131 to 170 (the Oregon Penal Code); ORS 181.870 *et seq.* (regulating licensing and training of private security personnel); ORS 133.220(3) (permitting private citizens to make arrests); and ORS 133.225(2) (permitting persons to use physical force in making an arrest). The Court of Appeals found evidence in those statutes that Oregonians "value" a safe and orderly community, and share a "common concern" for reliable and effective law enforcement by citizen officers, particularly at large public events where there is little or no police presence. The court concluded that plaintiffs had stated a claim for wrongful discharge because the aforementioned "policies" would be thwarted if employers could discharge employees with impunity for arresting lawbreakers at a large concert venue. *Id.* at 145-49.

Defendant acknowledges that some of the cited statutes (*i.e.*, ORS chapters 131-170) evince a general public policy in favor of an "orderly and safe community." Defendant argues, however, that those statutes do not impose or even suggest that private citizens have a public duty to take law enforcement action against lawbreakers. Defendant further argues that, although ORS 133.220(3) permits citizen arrests and ORS 181.870 *et seq.* regulates the licensing and training of private security personnel, neither statute *requires* private citizens or private security guards to arrest lawbreakers whom they encounter.

Implicit in defendant's argument is the proposition that, for purposes of the "public duty" theory of wrongful discharge, such a duty exists only if some statute or other source of law imposes a specific legal obligation on the employee to act in the way that precipitates the discharge. That view of the public duty theory is antagonistic to, and far narrower than, the Court of Appeals' formulation quoted above. However, we need not decide, in this case, whether the "public duty" construct is as narrow as defendant's argument suggests. That is so because, as we shall explain, the statutes on which plaintiffs rely do not establish any public duty that is relevant in this case.

As noted, the Court of Appeals correctly acknowledged that it is necessary to " 'find' a public duty, not create one, using 'constitutional and statutory provisions, or the case law of this or other jurisdictions.' " *Babick*, 160 Or App at 144. In purporting to "find" a public policy on the matter, the Court of Appeals relied, first, on ORS chapters 131-170. In that court's view, those statutes reflect a public policy against crime, and in favor of community safety and order. However, such expressions of a public desire for law and order are far too general to support plaintiffs' "public duty" theory. We are concerned here with a duty to perform a specific act (the arrest of lawbreakers by private citizens or private security personnel), and the statutes cited have nothing to say about that kind of act.

The Court of Appeals also relied on ORS 133.220(3) and ORS 133.225(2), which entitle private citizens to arrest lawbreakers and which, in the Court of Appeals' view, demonstrate that the public is "concerned" about law enforcement in circumstances in which police officers are not present. However, whether the allusion to common "concern" is accurate, those statutes, on their face, are neutral on the essential issue, which is whether the law encourages law enforcement action by private individuals or security personnel or otherwise demonstrates that such acts enjoy high social value.

The third observation on which the Court of Appeals' relied, *viz.*, that ORS 181.870 *et seq.* (which regulates the

licensing and training of private security personnel) demonstrates "common concern for reliable and effective private law enforcement," *Babick*, 160 Or App at 146, suffers from a similar lack of focus. That statutory scheme shows that the public is concerned about the manner in which private law enforcement is carried out; it does not suggest that the activities of private security personnel enjoy any higher social value than the activities of employees in other professions to which the at-will rule applies. Neither do the statutes impose an affirmative duty on private security personnel to arrest lawbreakers.

■ In short, we find no support in the statutes that have been brought to our attention (and upon which the Court of Appeals relied) for a conclusion that some substantial public duty requires the kinds of acts that allegedly triggered plaintiffs' discharge. The Court of Appeals erred in purporting to "find" such a policy. Thus, even accepting the view of the Court of Appeals that a "public duty" may arise out of some expression of a "substantial public policy" that would be thwarted by the discharge at issue (as opposed to a law that specifically obligates an employee to act in a certain way), plaintiffs have failed to establish that predicate here. Plaintiffs' argument that they were fired for acting in accordance with a public duty is not well taken. The trial court did not err in dismissing plaintiffs' wrongful discharge claim. The contrary conclusion of the Court of Appeals was error.[3]

## INTENTIONAL INFLICTION OF SEVERE EMOTIONAL DISTRESS

■ To state a claim for intentional infliction of severe emotional distress, a plaintiff must plead that

---

[3] The foregoing conclusion resolves the issue raised in plaintiffs' petition for review, *viz.*, whether those plaintiffs who were not present at the Phish concert or did not make arrests, but who were discharged because of their coworker's law enforcement actions, stated a claim for wrongful discharge. We have concluded that the Court of Appeals erred in reinstating the wrongful discharge claims of plaintiffs who were involved in arresting lawbreakers at the Phish concert. Given that disposition, the plaintiffs who were not involved in the arrests gain nothing by arguing, as they do in their petition, that defendant fired them for the same retaliatory reason that it fired their coworkers who were present at the Phish concert.

" '(1) the defendant intended to inflict severe emotional distress on the plaintiff, (2) the defendant's acts were the cause of the plaintiff's severe emotional distress, and (3) the defendant's acts constituted an extraordinary transgression of the bounds of socially tolerable conduct.' "

*McGanty v. Staudenraus*, 321 Or 532, 543, 901 P2d 841 (1995) (quoting *Sheets v. Knight*, 308 Or 220, 236, 779 P2d 1000 (1989)). Defendant contends that plaintiffs' complaint failed to state a claim for intentional infliction of severe emotional distress on two grounds: (1) plaintiffs failed to allege the requisite level of intent; and (2) none of the acts alleged in the complaint constitutes an "extraordinary transgression of the bounds of socially tolerable conduct.

We first consider defendant's argument with respect to the allegation of intent. Defendant argues that the complaint is deficient because it fails to allege that defendant knew that its conduct was substantially certain to cause plaintiffs to suffer severe emotional distress. Defendant relies on *McGanty* which, in defendant's view, stands for the proposition that a claim for intentional infliction of severe emotional distress must allege *both* that the defendant desired to inflict severe emotional distress and that the defendant knew that such distress was substantially certain to result from defendant's conduct.

Defendant misreads *McGanty*. In *McGanty*, this court considered whether a plaintiff adequately had alleged intent when he alleged that the defendant's *acts* were intentional and that the defendant knew or should have known that those acts would cause severe emotional distress. *McGanty*, 321 Or at 544. Before *McGanty*, this court had indicated that a plaintiff must allege that the defendant acted with the *purpose* of inflicting severe emotional distress to sustain a claim for intentional infliction of emotional distress. *See, e.g., Patton v. J. C. Penney Co.*, 301 Or 117, 122-23, 719 P2d 854 (1986) (so holding). However, in *McGanty*, this court concluded that those previous statements with respect to the intent requirement were incorrect and that the correct formulation was expressed in the *Restatement (Second) of*

*Torts*, section 8A (1965), including Comments a and b (defining "intent" for purposes of intentional torts to pertain to consequences that actor desires, but also to circumstances where actor "knows that the consequences are certain, or substantially certain, to result from his act, and still goes ahead") and section 46 (describing elements of tort of intentional infliction of severe emotional distress). *McGanty*, 321 Or at 549-50. This court quoted with approval the following portion of the commentary to section 46, which explains the element of intent in the specific context of the tort of intentional infliction of severe emotional distress:

> "The rule stated in this Section applies where the actor desires to inflict severe emotional distress, *and also* where he knows that such distress is certain, or substantially certain, to result from his conduct."

*Id.* at 550. Applying that standard to the allegation in the *McGanty* complaint, the court concluded that the plaintiff's allegation that the defendant acted volitionally with knowledge that the acts would cause severe emotional distress was sufficient. *Id.* at 550-51.

Thus, *McGanty* does not indicate, as defendant suggests, that a plaintiff must allege *both* that the defendant desired to inflict severe emotional distress *and* that the defendant knew that such distress was substantially certain to result from a volitional act. Rather, it holds that either allegation is sufficient to withstand a motion to dismiss.

■ Plaintiffs in the present case specifically alleged that defendant acted with a purpose of causing plaintiffs severe emotional distress: "In so acting, defendant * * * intended to * * * inflict severe emotional distress on plaintiffs." Such an allegation is sufficient at this stage of the proceedings to survive a motion to dismiss. Plaintiffs need not allege also that defendant acted with knowledge that severe emotional distress was substantially certain to result from its conduct.

Defendant also has suggested that plaintiffs' intentional infliction of severe emotional distress claim fails because the conduct alleged is not sufficiently outrageous, *i.e.*, it does not qualify as an "extraordinary transgression of the bounds of socially tolerable conduct." *McGanty*, 321 Or at

543. In that regard, plaintiffs allege that defendant: (1) publicly and privately berated them for taking the law enforcement actions that they did; (2) humiliated them by announcing that plaintiffs' actions would create a marketing disaster; (3) terminated their employment upon learning that plaintiffs had been threatened by Phish employees and had defended themselves; and (4) released "intoxicated and violent" concertgoers who had been detained by plaintiffs, thereby presenting a threat of imminent physical harm to them.

We need to discuss only one of those allegations, *viz.*, the allegation that defendant exposed plaintiffs to a "threat of imminent physical harm" by releasing "intoxicated and violent concertgoers who [previously] had been detained by plaintiffs." Intentionally causing another person severe emotional distress by exposing that person to a threat of imminent physical harm is, or may be, outside the bounds of socially tolerable behavior. *See, e.g., Brewer v. Erwin*, 287 Or 435, 458-60, 600 P2d 398 (1979) (landlord's attempt to frighten tenant out of apartment by disconnecting utilities, acting in threatening manner, and demolishing part of building while tenant was residing in it could constitute intentional infliction of severe emotional distress).

As we already have noted, we give plaintiffs the benefit of all favorable inferences that may be drawn from the pleadings. We assume, therefore, that the threat to plaintiffs was a grave one, *i.e.*, that, under the circumstances, there was a significant probability that the "intoxicated and violent" detainees physically would attack and harm those who had detained them. We also assume, given plaintiffs' other allegations about defendant's conduct during the concert, that defendant not only released a vengeful mob against plaintiffs, but in some sense added to the threatening atmosphere by interfering with plaintiffs' work and publicly rebuking them on the scene.

We agree with the Court of Appeals that plaintiffs have alleged conduct that a jury could conclude was socially intolerable. Those plaintiffs who were exposed directly to a threat of physical attack have stated a claim for intentional infliction of severe emotional distress. Those plaintiffs who

were not present at the concert or who were not involved in arresting concertgoers were not exposed to a threat of imminent harm by defendant's conduct. We therefore also agree with the Court of Appeals that the trial court properly dismissed those plaintiffs' claims for intentional infliction of emotional distress.

The decision of the Court of Appeals is affirmed in part and reversed in part. The judgment of the circuit court is affirmed in part and reversed in part. The case is remanded to the circuit court for further proceedings.