**Douglas CARD, Plaintiff,**

v.

**Daniel PIPES and Jonathan Schanzer, Defendants.**

**No. 03–6327HO.**

United States District Court, D. Oregon.

March 1, 2004.

David C. Force, Eugene, OR, for Plaintiff.

Steven M. Wilker, Tonkon Torp, LLP, Portland, OR, for Defendants.

ORDER

HOGAN, District Judge.

Defendants removed this action from the Circuit Court of the State of Oregon for Lane County. The amended complaint alleges claims for defamation and intentional infliction of emotional distress (IIED). Defendants move to dismiss the amended complaint on grounds that plaintiff has not effected proper service and the amended complaint fails to state a claim. Defendants also move to strike the amended complaint pursuant to Oregon's anti-

strategic lawsuit against public participation (SLAPP) statute, Or.Rev.Stat. § 30.142 *et seq.*

### Background

Plaintiff is a professor of Middle East studies at the University of Oregon. Plaintiff's first claim alleges defendants defamed him by (1) republishing on their web site statements first published by defendants in the New York Post that falsely attribute anti-Israel statements to plaintiff, and (2) publishing in the Jewish Review false statements which "as a whole impl[y] that [defendants] confirmed the truth of all statements [attributed to plaintiff on the website] and that plaintiff's denial of those statements [is] false." Amend. Comp. ¶¶ 3, 7 ©. Plaintiff's second claim alleges that defendants intentionally inflicted emotional distress upon him by attempting to coerce him to disclose to them his class list and student examinations, allegedly in violation of federal law and university regulations, and to write an essay acceptable to defendants condemning protected political expression and activism in the classroom, in exchange for defendants ceasing publication of the defamatory statements on their web site. *Id.*, ¶ 12.

### Discussion

**I. Service**

■ Defendants argue that this action should be dismissed because the method of service employed by plaintiff is invalid under Oregon law.[1] Summons must be served in any manner reasonably calculated under all the circumstances to apprise the defendant of the existence and pen-

---

1. Plaintiff made his efforts at service prior to removal. Nothing suggests that plaintiff has served defendants by a method specifically authorized by Rule 4(e)(2) of the Federal Rules of Civil Procedure, so the court examines whether plaintiff has effected service pursuant to Oregon law. Fed.R.Civ.P. 4(e)(1). Moreover, as discussed below, defendant's challenge the timeliness of plaintiff's state law claims. Therefore, Oregon's service requirements apply. *Pelster v. Walker,* 185 F.Supp.2d 1174, 1179–80 (D.Or.2001).

dency of the action and to afford a reasonable opportunity to appear and defend. Or.R.Civ.P. 7D(1). To resolve a dispute over the sufficiency of service, a court first determines whether service was accomplished by a method described by Oregon Rule of Civil Procedure 7D(2) and permitted for use upon a particular defendant identified in Rule 7D(3). *Davis Wright Tremaine, LLP, v. Menken,* 181 Or.App. 332, 45 P.3d 983, 985 (2002) (citing *Baker v. Foy,* 310 Or. 221, 797 P.2d 349 (1990)). "If so, service is presumptively adequate and, unless the defendant overcomes the presumption, service will be deemed effective." *Id.* If presumptively adequate service is not effected, the court must determine whether the manner of service employed satisfies the reasonable notice standard set forth in Rule 7D(1). *Id.* Plaintiff's initial attempt at mail service is not presumptively adequate. It is undisputed that someone other than defendants signed the mailing receipt, so the requirements of Rule 7D(3)(a)(I) are not satisfied. *See* Force Aff., Ex. 1 at 5.

■■■ Plaintiff also sought and obtained an order from the Circuit Court of Oregon for Lane County, pursuant to Rule 7D(6)(a), permitting alternative service by certified mail to a business address, coupled with electronic delivery of copies of the summons and complaint to email addresses presumably associated with defendants. Force Aff., Exs. 1 & 2. Although the parties dispute whether the state court erred in issuing the order, the court need not reach this issue. Court-approved alternative service methods are not presumptively adequate, and must be tested under the reasonableness standard of Rule 7D(1). *Davis Wright,* 45 P.3d at 985 n. 5. Therefore, the relevant issue is whether the method employed by plaintiff satisfies the reasonable notice standard of Rule 7D(1). *Davis Wright,* 45 P.3d at 985 n. 5.[2] The inquiry focuses on whether plaintiff's conduct was objectively and reasonably calculated under the totality of the circumstances existing at the time of attempted service to apprise defendants of the pendency of the action. *Id.* at 987. Defendants' actual notice is essentially irrelevant. *Id.* at 986. Plaintiff has the burden of demonstrating adequate service. *Pham v. Faber,* 152 Or.App. 634, 955 P.2d 257, 261 (1998).

■■■ Service under the alternative service order did not provide sufficient notice to meet the requirements of Rule 7D(1). The method consisted of unrestricted certified delivery to a post office address, coupled with electronic delivery over the internet to email addresses. Force Aff., Ex. 2 at 2. The order further provided that service would be deemed complete when the certified mailing to each defendant was either refused or accepted. *Id.* Unrestricted registered or certified delivery to street addresses or post office boxes coupled with first class delivery is insufficient because of the possibility that someone other than defendant may receive the mailing. *Davis Wright,* 45 P.3d at 988. As is the case with a post office box or street address, an individual could grant third party access to an email account. *Id.* The method is not practically distinguishable from methods found inadequate by Oregon's courts.

---

2. In any event, the evidence supports defendants' position that the state court erred in issuing the alternative service order. Rule 7D(6)(a) required plaintiff to show that service could not be made by any specified method. Plaintiff's counsel averred to the state court only that defendants did not personally sign mailing receipts. Force Aff., Ex. 1 at 3. Signed mailing receipts are not required to effect personal, substitute or office service. *See* Or.R.Civ.P. 7D(2).

■ The final issue is whether plaintiff's initial attempt at restricted delivery coupled with first class mailing, while not presumptively adequate under Rule 7D(3)(I), was nevertheless sufficient under the reasonable notice requirement of Rule 7D(1), based on the circumstances known to plaintiff at the time of attempted service. Plaintiff avers that he sent emails to Pipes at the Middle East Forum during the summer of 2002, and that he never spoke with Pipes. While plaintiff's counsel avers that he could not determine Pipes' home address, neither plaintiff nor counsel describe what efforts they employed to determine whether Pipes could be reached at the Middle East Forum in September, 2003. Nothing suggests that Pipes received or returned plaintiff's emails to him at the Middle East Forum in the summer of 2002. No evidence in the record suggests how plaintiff or counsel came upon the email address for Pipes listed in the alternative service order, or whether and why they believed Pipes was likely to receive email at that address. Evidence submitted by plaintiff dated December 3, 2003 lists a different email address for Pipes, although this evidence does not address what plaintiff or counsel knew at the time of attempted service. Force Aff., Ex. 2 at 1. In fact, plaintiff points to no evidence that could form the basis of his or counsel's knowledge of Pipes's position or place of employment.

As to Schanzer, plaintiff's evidence establishes that he contacted Schanzer at the Middle East Forum by email in September, 2002 and sometime thereafter, and unwittingly contacted him at the Washington Institute in late September, 2002. Schanzer and plaintiff dispute whether Schanzer gave plaintiff Washington, D.C. contact information for Schanzer in September, 2002. Plaintiff averred that the Forum's web page on December 3, 2003 advised that Schanzer can be reached by email at the Forum, and that the web page contained the same information in 2002, although he does not specify when during 2002 that he viewed the web page. While plaintiff's counsel avers that he could not determine Schanzer's home·address, neither plaintiff nor counsel describe what efforts they employed to determine whether Schanzer could be reached at the Forum in September, 2003.

Based on this evidence, the court concludes that service by restricted delivery to these defendants at the Middle East Forum, coupled with first class mailing to the same address, was not reasonably calculated under the totality of the circumstances to apprise defendants of the pendency of this action and provide an opportunity to defend, and therefore was insufficient under Or.R.Civ.P. 7D(1). Plaintiff's information regarding Schanzer was stale, and plaintiff concedes that Schanzer informed him in September, 2002 that he would be working somewhere else, while continuing as a research fellow at the Middle East Forum. Card. Aff. at 3. Objectively, this information creates doubt as to whether Schanzer could in fact continue to be reached at the Middle East Forum one year later. Plaintiff's evidence is simply silent as to the basis for plaintiff's apparent belief that Pipes could be reached at the Middle East Forum. For example, nothing indicates that Pipes ever responded to plaintiff's attempts to contact him by email at the Middle East Forum during the summer of 2002.

## II. *Failure to State a Claim*

Defendant argues that counts one and two of the first claim for relief are time-barred, and the substantive allegations of count two of the first claim for relief and the second claim for relief are legally in-

sufficient to state a claim upon which relief may be granted.

### A. Limitations Period

Defendants argue that all of plaintiff's claims are subject to the one-year limitations period generally applicable to defamation actions in Oregon. *See* Or.Rev. Stat. § 12.120(2).

#### 1. Count One of First Claim for Relief

Count one alleges that defendants continued the republication of defamatory statements about plaintiff after September 12, 2002, with actual knowledge or reckless disregard of falsity of the statements. Amend. Comp. at 3. Plaintiff filed the original complaint on September 12, 2003. Liebman–Alperson Aff., Ex. B at 2. In alleging a continuing publication after September 12, 2002, the amended complaint establishes that the initial publication— that is, the republication on defendant's web site of statements from an earlier article appearing in the New York Post— occurred before September 12, 2002, outside the limitations period.

▉ Plaintiff offers three arguments in opposition, without citation to authority. First, plaintiff surmises that because he is a public employee, he is a public figure, and his claim could not have accrued until he informed defendants of the falsity of their statements such as to establish the factual basis for the malice showing required of public figure plaintiffs. The present record does not demonstrate that plaintiff is a public figure, although the parties have not seriously litigated this issue. *Cf. Hutchinson v. Proxmire,* 443 U.S. 111, 99 S.Ct. 2675, 61 L.Ed.2d 411 (1979) (holding professor who gained notoriety by responding to alleged defamation was not thereby rendered a public figure). In any event, the court finds no authority for the proposition that a public figure's

cause of action does not accrue until he acquires knowledge of facts establishing malice. In the absence of such authority, the court declines to subscribe to plaintiff's theory, as it undermines the purpose of the statute of limitations.

▉ Second, plaintiff argues that defendants' limitations argument against count one assumes that this is an action against the New York Post. The court does not follow this argument, but assures plaintiff that it has not assumed that the New York Post is the defendant to this count. Third, plaintiff argues that defendants' defamation of plaintiff continued through the date plaintiff filed the complaint, so that the limitations period is tolled by operation of the "continuing tort" doctrine, which holds that the limitations period does not begin to run until the conduct ends. *Flowers v. Carville,* 310 F.3d 1118, 1126 (9th Cir.2002); *Barns v. City of Eugene,* 183 Or.App. 471, 52 P.3d 1094, 1096 (2002). The court finds no Oregon cases addressing whether the doctrine applies to defamation claims, and plaintiff cites to none. Instead, the court's research reveals that courts presented with the question almost universally decline to apply the doctrine in defamation cases. *See e.g. Flowers,* 310 F.3d at 1126. This court also finds that the purposes of the limitations period are served by declining to apply the continuing violation doctrine to defamation claims. Count one of the first claim for relief is time-barred.

#### 2. Count Two of First Claim for Relief

▉ Count two alleges that defendants published defamatory statements about plaintiff in the Jewish Review on or about November 1, 2002, with actual knowledge of their falsity. This count is time-barred because plaintiff has not effected valid service within 60 days of the filing of the complaint on September 12, 2003, such

that commencement of the cause of action would relate back to that date, and plaintiff cannot due so within the limitations period. *See* Or.Rev.Stat. § 12.020(2).

### 3. Second Claim for Relief

■ This claim alleges intentional infliction of emotional distress (IIED). Defendants argue that because the gravamen of this claim is the allegedly defamatory statements cited in count one of plaintiff's first claim for defamation, the court should apply the one-year limitations period for libel claims. The court disagrees, and will apply the two-year limitations period applicable to IIED claims. *See Stupek v. Wyle Laboratories Corp.*, 327 Or. 433, 963 P.2d 678, 679 (1998). Defendants' authority is not on point, as it concerned a plaintiff's attempt to avoid the limitations period applicable to tort actions by characterizing his malpractice claim as one for breach of contract. *See Lindemeier v. Walker*, 272 Or. 682, 538 P.2d 1266 (1975). Furthermore, this claim alleges facts not alleged in count one of the defamation claim—specifically, that defendants attempted to coerce plaintiff to violate federal law and university regulations, and to compel his speech. Amend. Comp. at 5. Taking the allegations of the complaint as true, this claim could not have accrued prior to August 1, 2002, the date plaintiff alleges defendants commenced their coercive conduct. Therefore, the limitations period on this claim will not have run until August 1, 2004, at the earliest.

### B. Sufficiency of Allegations

### 1. Count Two of First Claim for Relief

Plaintiff argues that the allegations of this count accurately paraphrase statements published in the Jewish Review. However, the court will review the a copy of the actual publication submitted by defendant, the authenticity of which plaintiff does not challenge. *See* Lasasso Aff., Ex. A (copy of page from Jewish Review dated November 1, 2002); *United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir.2003). The following quotations from defendants' letter to the editor of the Jewish Review apparently form the basis for the allegations of count two.

> After publication [in the New York Post], Dr. Card launched a campaign to have us retract our statement. His proof included such materials as character references for him from a rabbi and from former students, which we dismissed as irrelevant to the issue of what took place in his course.

> When we asked Dr. Card to show us the final exam he had assigned (which the student had complained about) or a list of students to interview, he refused.

> He also refused our proposed compromise whereby we would retract our statement about his course in return for his writing an essay condemning bias and political activism in the classroom.

Lasasso Aff., Ex. A. Defendants argue that these statements are true, are statements of opinion, or are otherwise not capable of defamatory meaning.

■ Whether a statement is capable of defamatory meaning is a legal determination made with consideration to the content and context of the statement. *Reesman v. Highfill*, 327 Or. 597, 965 P.2d 1030, 1034 (1998). A defamatory statement is capable of subjecting another to hatred, contempt or ridicule, or may tend to diminish the esteem, respect, goodwill or confidence in which the other is held, or may excite adverse, derogatory or unpleasant feelings or opinions against the other. *Id.* "A statement falsely ascribing to a person characteristics or conduct that would adversely affect his fitness for his occupation or profession is capable of hav-

ing defamatory meaning." *Bock v. Zittenfield*, 66 Or.App. 97, 672 P.2d 1237, 1239 (1984).

Pure opinions are not actionable, but false assertions of fact and opinions that imply an undisclosed false assertion of fact may be capable of defamatory meaning. *Partington v. Bugliosi*, 56 F.3d 1147, 1153 (9th Cir.1995); *Bock*, 672 P.2d at 1240. It is the function of the court to determine whether a statement constitutes opinion and if so, whether it is nonetheless actionable. *See Bock*, 672 P.2d at 1239. The court examines the words of the statement, and the context and tenor of the work as a whole. *Partington*, 56 F.3d at 1153.

Defendants argue that their statement that they "dismissed [plaintiff's proof] as irrelevant to the issue of what took place in his course" is an opinion protected by the First Amendment, and not otherwise capable of defamatory meaning. The court agrees. The statement implies that the defendants formed an opinion that plaintiff's proof was irrelevant. Even if the statement is viewed as a factual assertion, the court finds that it lacks defamatory meaning.

Defendants' statements that plaintiff refused to produce a class list or final exam and refused defendants' proposed compromise are also incapable of defamatory meaning. Furthermore, plaintiff alleges in his second claim for relief that he refused defendants' request that he produce the class list and exam, and "write an 'essay' acceptable to the defendants ... condemn[ing] political activism and expression in the classroom ..." Amend. Comp. at 5. Plaintiff has essentially admitted the truth of the two statements, and truth is an affirmative defense. *Bank of Oregon v. Independent News, Inc.*, 298 Or. 434, 693 P.2d 35, 38 (1985).

### 2. Second Claim for Relief—IIED

Plaintiff's second claim alleges that beginning on or about August 1, 2002 and continuing through the present time, defendants have attempted to induce plaintiff to (1) turn over his class list and final exam to defendants in violation of federal law and university regulations, and (2) write an essay acceptable to defendants condemning political activism and expression in the classroom, all in exchange for defendants ceasing publication of defamatory statements concerning plaintiff on their web site. Plaintiff further alleges that due to his refusal to agree to defendants' requests, defendants continue to publish the defamatory statements concerning him for the purpose of defaming and injuring him. Amend. Comp. at 5. The alleged defamatory statements read as follows:

> In a course entitled "Social Inequality," [plaintiff] called Israel a "terrorist state" and Israelis "baby killers" and insisted that students agree with his view that Israel "stole land" on the final exam. One student said [plaintiff] bashed Israel "at every opportunity."

Amend. Comp. at 2–3. Defendants argue that their alleged conduct is not sufficiently outrageous to state a claim for IIED.

To be actionable, the alleged conduct must be outrageous or constitute an extraordinary transgression of socially acceptable conduct. *Babick v. Oregon Arena Corp.*, 333 Or. 401, 40 P.3d 1059, 1063–64 (2002). This legal determination is made considering the totality of allegations in a particular case. *Id.* Factors relevant to the inquiry include whether a special relationship existed between plaintiff and defendants (such as physician-patient, counselor-client, or common carrier-passenger), whether defendants' conduct was undertaken for an ulterior purpose or

to take advantage of a particularly vulnerable individual, and the setting in which the conduct is alleged to have occurred. *Delaney v. Clifton*, 180 Or.App. 119, 41 P.3d 1099, 1106–07 (2002).

▆▆ Considering these factors and the totality of the allegations, the court concludes that the alleged conduct of defendants is not sufficiently outrageous to state a claim for IIED. No special relationship exists between the parties. Defendants' conduct involved conversations between defendants and plaintiff as well as publication on defendants' website and in one issue of the Jewish Review. Plaintiff alleges that defendants' motive was to defame and injure him. Plaintiff is not a particularly vulnerable individual.

The absence of a special relationship is most harmful to plaintiff's IIED theory. "[T]he lack of such a relationship generally defeats a conclusion that the conduct is actionable through an IIED claim." *Id.* This case differs from *Kraemer v. Harding*, 159 Or.App. 90, 976 P.2d 1160, 1173 (1999), wherein the court held that defendants' accusation without reasonable foundation that the plaintiff school bus driver was a child sex abuser was so extraordinary that a reasonable jury could have found it to be beyond all bounds of socially tolerable conduct. In contrast to *Kraemer*, plaintiff here is not accused of a crime. While the statements are defamatory and if believed, may be injurious to plaintiff's reputation and career, a reader accepting the truth of the statements would likely believe that the statements attributed to plaintiff involved hyperbole. Although the statements may lead readers to view plaintiff as a professor who carries an anti-Israel bias into the classroom, this stigma is qualitatively different than the stigma associated with being labeled a child sex offender. The court finds that the allegations that defendants attempted to coerce plaintiff to undertake certain actions with the threat of continued publication of defamatory statements does not allege sufficiently outrageous conduct to state a claim for IIED.

### III. *Motion to Strike*

Finally, defendants move to strike the amended complaint pursuant to Oregon's anti-SLAPP statute, Or.Rev.Stat. § 30.142 *et seq.* Under this law, a defendant may make a special motion to strike a claim that arises out of, *inter alia*, a written statement or other document presented in a place open to the public or public forum in connection with an issue of public interest. Or.Rev.Stat. § 30.142(1),(2). Once the defendant satisfies his initial burden to make a prima facie showing that plaintiff's claim arises out of protected conduct, the burden shifts to the plaintiff to establish that there is a probability that he will prevail by presenting substantial evidence to support a prima facie case. Or.Rev. Stat. § 30.142(3). If plaintiff fails to do so, the court must grant the motion. Or.Rev. Stat. § 30.142(1). Plaintiff's claims arise out of written statements presented in a place open to the public or public forum (website, newspaper) in connection with an interest of public concern (alleged political activism and bias in the college classroom).

▆▆ Plaintiff argues that the anti-SLAPP statute is unavailable to defendants in this federal forum, citing to Or. Rev.Stat. § 30.146, which declares that the statute establishes a procedure for seeking dismissal of certain claims, but does not alter the substantive law governing those claims. After characterizing a similar California statute as procedural, the Ninth Circuit held that defendant could bring a motion to strike under the statute in a federal diversity action because the procedure does not conflict with Rules 8, 12 and 56 of the Federal Rules of Civil Procedure.

United States ex rel. Newsham v. Lockheed Missiles & Space Co., 190 F.3d 963, 972–73 (9th Cir.1999), cert. denied, 530 U.S. 1203, 120 S.Ct. 2196, 147 L.Ed.2d 232 (2000). The court further observed that application of the anti-SLAPP statute in diversity actions serves the purposes of the Erie doctrine, including discouraging forum-shopping. Id. Oregon's anti-SLAPP procedure is available in this diversity case.

 Next, plaintiff argues that by moving to strike under the anti-SLAPP statute which requires such a motion to be filed within 60 days of service of the complaint (see Or.Rev.Stat. § 30.144(1)), defendants have conceded service and mooted their motion to dismiss for insufficient service. Although the court finds no cases interpreting Oregon's anti-SLAPP statute, the court presumes that by "service," the legislature means legally valid service. See Kenner v. Schmidt, 252 Or. 218, 448 P.2d 537 (1968) en banc (holding invalid service does not toll running of limitations period under statute providing that if complaint is served within 60 days of filing, action is deemed commenced on date of filing). Defendants' filing of their special motion to strike is not inconsistent with their challenge to the legal sufficiency of service.

Because plaintiff's claims are dismissed for insufficient service or for failure to state a claim, plaintiff cannot establish a probability that he will prevail by presenting substantial evidence to support a prima facie case, and defendants' special motion to strike is granted. Vess v. Ciba–Geigy Corp. USA, 317 F.3d 1097, 1109 (9th Cir. 2003).

To sum up, plaintiff has not effected valid service to date, so that all of his claims are time-barred; count one of the first claim for relief is time-barred in any event; the allegations of count two of the first claim for relief and the second claim for relief are substantively insufficient to state a claim; and based on the foregoing, plaintiff fails to meet his burden to avoid a special motion to strike under Oregon's anti-SLAPP statute.

*Conclusion*

For the foregoing reasons, defendants' motion to dismiss [# 6] is granted, and defendants' motion to strike [# 21] is granted. This action is dismissed.

IT IS SO ORDERED.