Argued and submitted December 6, 2010, affirmed April 27, petition for review
denied July 28, 2011 (350 Or 571)

Karen M. ROBERTS,
*Plaintiff-Appellant,*

*v.*

OREGON MUTUAL INSURANCE COMPANY,
an Oregon corporation,
*Defendant-Respondent.*

Yamhill County Circuit Court
CV080255; A142739

255 P3d 628

Bart A. Brush argued the cause and filed the briefs for appellant.

Amy R. Alpern argued the cause for respondent. With her on the brief were Janice H. Kim and Littler Mendelson, P.C.

Before Brewer, Chief Judge, and Edmonds, Senior Judge.

EDMONDS, S. J.

**EDMONDS, S. J.**

Plaintiff, a former employee of defendant, brought claims against defendant for common-law wrongful discharge and for unlawful employment discrimination under ORS 659A.230(1). She appeals after the trial court granted defendant summary judgment under ORCP 47. We affirm.

For purposes of summary judgment, we review the facts in the light most favorable to plaintiff to determine if there exist genuine issues of fact which, as a matter of law, preclude summary judgment in defendant's favor. Plaintiff was employed by defendant beginning in May 2000. Her employment was terminated by defendant in December 2006. There are five events that form the gravamen of plaintiff's claims. In March and April of 2006, plaintiff complained to her supervisor about coworkers skipping meal and break periods, thereby permitting them to leave work earlier. In plaintiff's view, the practices by her coworkers increased her personal workload because her coworkers were unable to complete their work due to their shortened workdays. Plaintiff's supervisor was not receptive to plaintiff's complaints. On May 25, plaintiff's supervisor revised plaintiff's work schedule. Under the new schedule, plaintiff was required to work until 6:00 p.m. rather than until 3:00 p.m. On that same day, plaintiff contacted defendant's human resource manager. Prior to that meeting, plaintiff noted that she wanted to be allowed to schedule her work day as her workers were. During the meeting, plaintiff told the manager about the practices, of her coworkers. Plaintiff, who was unaware that the practices were in violation of Oregon labor law, was told by the manager that the practice was not legal and that defendant was required to enforce rest and meal break requirements. In June, plaintiff sent an e-mail to defendant's chief executive officer contending that her supervisor had retaliated against her by changing her work schedule because she had contacted the human resources manager. Plaintiff was referred by the chief executive officer to a vice president, with whom plaintiff later met.

In the discussion with the vice president, plaintiff expressed her hope to have her schedule changed back as it had been originally. She testified that she also told him about

the practices of her coworkers regarding rest and meal breaks. According to plaintiff,

> "I explained to him what was going on, and essentially just told him the events that were leading up to it, and that I was—I felt that I was being singled out and retaliated against. And [plaintiff's supervisor] was extremely hostile, and that I didn't understand it because I had just received an outstanding, glowing review from her, and my work never changed."

Plaintiff testified that the vice president responded to her explanation by stating, "That's what you get for going to HR and complaining." Plaintiff understood the vice president to be referring to the change in her schedule. Eventually, plaintiff was discharged from her employment in December 2006 after defendant claimed that she had been insubordinate to her supervisor.

In June 2008, plaintiff filed this action for civil damages against defendant. In her complaint, she alleges claims for common-law wrongful discharge and unlawful employment discrimination under ORS 659A.230. In her claim for wrongful discharge, she alleges, in part:

"4.

"On several occasions during March, April, and May, 2006, Plaintiff informed her supervisor, that certain employees were not taking rest breaks as required by Oregon law.

"5.

"After reporting the wage-and-hour violations to her supervisor, her supervisor became more hostile toward Plaintiff, but took no steps to correct the violations.

"6.

"On or about May 25, 2006, Plaintiff reported the violations to Defendant's Human Resources Department.

"7.

"Shortly after Plaintiff reported the violations to Human Resources, Plaintiff's supervisor, in retaliation for Plaintiff having reported the violations, changed Plaintiff's

work schedule in a manner that the supervisor knew to be detrimental to Plaintiff.

"8.

"During the ensuing months Plaintiff's supervisor, also in retaliation for Plaintiff having reported the violations, began to subject Plaintiff to a higher level of scrutiny than other employees, began to micromanage Plaintiff's work, and became increasingly hostile toward Plaintiff.

"9.

"On or about December 12, 2006, Defendant discharged Plaintiff from her employment.

"10.

"During plaintiff's employment, plaintiff pursued her legal right to report wage-and-hour law violations, which was directly related to her role as an employee, and of important public interest as indicated by ORS 659A.230, ORS 653.261 and OAR 839-020-0050, and ORS 653.991. Plaintiff resisted or opposed defendant's unlawful wage-and-hour practices.

"11.

"Defendant through its officers, agents, or employees wrongfully discharged plaintiff because plaintiff exercised her right to report wage-and-hour law violations, and because plaintiff resisted or opposed defendant's unlawful wage-and-hour practices."

Incorporating the above allegations into her second claim, plaintiff further alleges that defendant violated ORS 659A.230 by terminating her employment under the foregoing circumstances.

The trial court granted summary judgment for defendant on both claims. With respect to the common-law wrongful discharge claim, the court observed that an at-will employee can be discharged for any reason unless a remedy is necessary to implement an important public policy. It concluded that no such public policy interest was at stake in this case because

"plaintiff was not herself denied any wage or hour provisions designed to protect her rights as an employee. None of

the wage and hour statutes referenced by plaintiff require an employee to report other employees' or employers' wage and hour violations."

As to the claim made under ORS 659A.230(1), the trial court concluded that plaintiff's reports did not involve a report of criminal activity protected under the statute because plaintiff made only an internal report and did not report defendant's policies to an outside enforcement agency.

■    On appeal, plaintiff argues that she was terminated because she pursued an employment-related right of important public interest. Accordingly, in her view, the common-law tort of wrongful discharge is available to her as a remedy for the termination of her employment.[1] She also argues that the trial court erred in granting summary judgment on her claim under ORS 659A.230 because the statute does not require that an employee report the criminal activity to an outside enforcement agency. Defendant counters that plaintiff was neither pursuing her own employment-related right or an important public or societal obligation, and that ORS 659A.230 protects only persons who report criminal activity to outside agencies. In addition, defendant contends that plaintiff was not reporting criminal activity because she did not believe the activity to be criminal and, instead, wanted "to do the same thing as her coworkers."

After the trial court decided this case, the Supreme Court decided *Lamson v. Crater Lake Motors, Inc.*, 346 Or 628, 216 P3d 852 (2009). In *Lamson*, the plaintiff brought an action for wrongful discharge, alleging that he had been discharged from his employment for reporting unethical and unlawful trade practices to his employer. The jury ultimately found for the plaintiff, and the defendant appealed. This court reversed the judgment for the plaintiff, reasoning that the conduct for which the plaintiff had been purportedly discharged did not involve interests of sufficient public importance to support a claim for wrongful discharge as a matter of

---

[1] The Bureau of Labor and Industries "has authority to seek criminal prosecution of employers who violate rest break requirements." *Gafur v. Legacy Good Samaritan Hospital*, 344 Or 525, 537, 185 P3d 446 (2008); *see* ORS 653.991 ("Violation of any provision of this section or ORS 653.010 to 653.545 or of any rule adopted by the Wage and Hour Commission under ORS 653.307 shall be punishable as a misdemeanor.").

law. *Lamson v. Crater Lake Motors, Inc.*, 216 Or App 366, 383, 173 P3d 1242 (2007). On review, the Supreme Court, relying on *Babick v. Oregon Arena Corp.*, 333 Or 401, 40 P3d 1059 (2002), held that no source of law established a public duty relating to the plaintiff's conduct. *Lamson*, 346 Or at 637-41. According to the court, to establish such a duty, statutes cannot merely express a general public policy; rather, they must encourage specific acts or "otherwise demonstrate[ ] that such acts enjoy high social value." *Babick*, 333 Or at 409. Here, the same principle is applicable; none of the statutes upon which plaintiff relies speaks specifically to the reporting of an employer's wage and hour violations, nor do they place a duty on a person in plaintiff's circumstances to report such violations to the proper authorities.

In *Lamson*, the plaintiff alleged that he was wrongfully discharged for complaining to management about conduct he believed to constitute illegal and unethical sales tactics. Accordingly, the court examined whether the plaintiff's internal complaints to management about unlawful and unethical sales practices "served a public duty or interest that is sufficiently important to warrant a departure from the ordinary rules of law respecting discharge from at-will employment." 346 Or at 639. It concluded that the plaintiff's actions were not protected at common law by actions for wrongful discharge, reasoning:

> "In this case, [plaintiff] did not report to defendant's management that he had been required to engage in unlawful trade practices or, in the exercise of his job responsibilities, that defendant corporation was itself engaged in such practices. Instead, plaintiff reported to defendant's management that an outside sales firm with which defendant had contracted—RPM—had engaged in unlawful practices and that plaintiff did not think defendant corporation should be associated with an outside firm of that ilk. Certainly, that was a defensible point of view, but, in light of the scope of authority that RPM had over the sales event, it was misdirected. At that juncture, the Attorney General and the various district attorneys were the ones who had authority to act immediately. *See* ORS 646.632(1) (authorizing enforcement action by 'prosecuting attorney');

ORS 646.605(5) (defining 'prosecuting attorney' to include Attorney General, district attorney)."

*Id.* at 640.

Similarly, there is no infringement on a public duty or interest that is sufficiently important to warrant a departure from the ordinary rules of law respecting discharge from at-will employment. As in *Lamson*, plaintiff did not pursue a right related to her role as an employee such as making a report of an alleged statutory or rule violation to any entity or person with authority to take action to enforce the statutory duties that plaintiff contends were violated. *See Handam v. Wilsonville Holiday Partners, LLC*, 225 Or App 442, 201 P3d 920 (2009), *vac'd and rem'd for recons*, 347 Or 533, 225 P3d 43, *adh'd to on recons*, 235 Or App 688, 234 P3d 133, *rev den*, 349 Or 171 (2010) (holding internal report by hotel employee of alleged violations of liquor commission rules by coworkers did not involve an important societal obligation sufficient to support a claim for common-law wrongful discharge); *see also* ORS 651.060 (vesting the Bureau of Labor and Industries with the authority to conduct investigations of violations of ORS chapters 652 and 653). It follows under *Lamson* that the trial court did not err in granting summary judgment to defendant on plaintiff's wrongful discharge claim.

■■ We turn now to the trial court's grant of summary judgment on plaintiff's claim under ORS 659A.230. That statute provides:

"(1) It is an unlawful employment practice for an employer to discharge, demote, suspend or in any manner discriminate or retaliate against an employee with regard to promotion, compensation or other terms, conditions or privileges of employment for the reason that the employee has in good faith reported criminal activity by any person, has in good faith caused a complainant's information or complaint to be filed against any person, has in good faith cooperated with any law enforcement agency conducting a criminal investigation, has in good faith brought a civil proceeding against an employer or has testified in good faith at a civil proceeding or criminal trial.

"(2) For the purposes of this section, 'complainant's information' and 'complaint' have the same meanings given those terms in ORS 131.005.

"(3) The remedies provided by this chapter are in addition to any common law remedy or other remedy that may be available to an employee for the conduct constituting a violation of this section."

The trial court's ruling and the parties' arguments regarding the meaning of the statute present a question of statutory interpretation regarding the intent of the legislature that is of first impression insofar as we can ascertain.[2] Generally, the intent of the legislature is ascertained by examining the text and context of the statute as well as any helpful legislative history offered by the parties. *State v. Gaines*, 346 Or 160, 172-72, 206 P3d 1042 (2009).

We examine more particularly the text of ORS 659A.230(1). The phrase to be interpreted provides that an unlawful employment practice occurs when an employer discriminates or retaliates against an employee "for the reason that the employee has in good faith *reported* criminal activity by any person[.]" (Emphasis added.) The ordinary meaning of the verb "reported" means "to give an account of : NARRATE, RELATE, TELL." *Webster's Third New Int'l Dictionary* 1925 (unabridged ed 2002). However, the context in which the word is used adds additional meaning to the definition. *State v. Depeche (A138304)*, 242 Or App 147, 153, 252 P3d 861 (2011). For example, one use of the word "report" is to "make a charge of misconduct against [another]," while another potentially applicable use is "to make known to the proper authorities : give notification of ‹a fire› ‹an accident›." *Webster's* at 1925.

■ ORS 659A.230(1) provides for four circumstances in which an unlawful employment practice could arise; they are

---

[2] In *Lamson*, the court acknowledged, with reference to ORS 659A.230(1), that "[t]here are instances in which employees may be protected when they report unlawful actions of others by means of civil or criminal channels recognized by law[,]" and it pointed out that "that is not what happened in this case." 346 Or at 640. However, we do not understand the *Lamson* court to have decided the issue of whether a civil action could be maintained under ORS 659A.230(1) when the report of criminal activity is made internally. The only claim before the court in *Lamson* was a wrongful discharge claim.

when an employee is discriminated against in his or her employment because (1) "the employee has in good faith reported criminal activity by any person"; (2) the employee has in good faith caused a complainant's information or complaint to be filed against any person; (3) the employee has in good faith cooperated with any law enforcement agency conducting a criminal investigation; or (4) the employee has in good faith brought a civil proceeding against an employer or has testified in good faith at a civil proceeding or criminal trial. Only the circumstance—when the employee "has in good faith reported criminal activity by any person"—is potentially applicable, because the other statutory circumstances require conduct that the parties agree did not occur in this case.

Also, part of the context of ORS 659A.230 is ORS 131.005, which is referenced in subsection (2) of the statute. ORS 131.005 is part of the Oregon Criminal Code. Thus, the import of subsection (2) is that subsection (1) refers to conduct that is part of or results in a criminal investigation or process. That implication is further buttressed by the references in the other phrases of subsection (1) that refer to "cooperat[ion] with any law enforcement agency conducting a criminal investigation" and testifying in a "criminal trial."

In addition to the wording of the statute, the trial court was persuaded, in part, by legislative history accompanying the enactment of what would become ORS 659A.230. On appeal, plaintiff argues that "[t]he legislative history is of little, if any, value in determining the legislature's intent." (Underscoring and boldface omitted.) The legislative history at issue consists of a statement by Representative Heidi Rijkin in a hearing before the Senate Committee on Labor in 1991 regarding what was then House Bill 3435 and later became ORS 659A.230. In her testimony, Rijkin stated:

"HB 3435 is defined to help victims of crimes, and those who are witnesses to crime to protect their jobs. HB 3435 will increase the chance for law enforcement officials to gather strong information from witnesses, assuring that those witnesses' jobs won't be threatened by their cooperation."

Tape Recording, Senate Committee on Labor, HB 3435, June 5, 1991, Tape 132, Side A (statement of Rep Heidi Rijkin).

According to plaintiff, the above testimony should be given little weight because, in plaintiff's view, the quote is "cherry-picked" from legislative history that reveals that at no time did any legislator discuss the issue of to whom an employee must report criminal activity. Although we agree with plaintiff that the above testimony does not reveal that the legislature considered the precise issue before us, the testimony is at least helpful in the sense that it indicates that the general policy of the statute is to aid employees in their employment-related relationships who report criminal activity.

■ The trial court concluded, in light of the text, context, and legislative history underlying the statute, that plaintiff's reports did not involve a report of criminal activity protected under ORS 659A.230(1). We agree with the trial court for the following reason. A report to be protected by the statute must constitute a report of "criminal activity." In the context of the protection provided for by the statute, a "report of criminal activity" necessarily implies that the person making the report believes that he or she is reporting criminal conduct at the time that the report is made. In this case, plaintiff testified that she was unaware that the practices that she complained about to her supervisor were in violation of Oregon labor law until after the manager informed her of that fact. Until that point in time, plaintiff testified that she believed that defendant's practices were "okay." In fact, she desired the benefit of the employer's unlawful practices. Consequently, plaintiff is unable to demonstrate the gravamen of a claim under ORS 659A.230(1), and her claim necessarily fails as a result. It follows that the trial court correctly granted summary judgment to defendant.

Affirmed.